IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

GRACE A. T.,[1]

    Plaintiff,

v.                                                                                 2:24-cv-00243-JMR

LELAND DUDEK,[2] Acting Commissioner
of the Social Security Administration,

    Defendant.

## MEMORANDUM OPINION AND ORDER

THIS MATTER comes before the Court on plaintiff Grace T.'s Motion to Reverse and Remand to Agency with Supporting Memorandum, filed on December 3, 2024.  Doc. 21.  Defendant filed a response (Doc. 25) and Plaintiff filed a reply (Doc. 26).  The parties consented to my entering final judgment in this case pursuant to 28 U.S.C. § 636(c) and FED. R. CIV. P. 73(b).  Docs. 12–14.  Having meticulously reviewed the entire record and being fully advised in the premises, I find that the Administrative Law Judge ("ALJ") erred in analyzing Plaintiff's need for a hand-held assistive device (cane or walker).  I therefore GRANT Plaintiff's motion and remand this case to the Commissioner for further proceedings consistent with this opinion.

---

[1] Due to sensitive personal and medical information contained in this opinion, the Court uses only the plaintiff's first name and last initial.  In so doing, the Court balances the plaintiff's privacy interest in her personal medical information, *United States v. Dillard*, 795 F.3d 1191, 1205–06 (10th Cir. 2015), and the public's interest in accessing the opinion, FED. R. CIV. P. 5.2(c)(2)(B).

[2] Leland Dudek became the Acting Commissioner of the Social Security Administration on February 16, 2025, and is automatically substituted as the defendant in this action.  FED. R. CIV. P. 25(d).

I.   **Standard of Review**

The standard of review in a Social Security appeal is whether the Commissioner's final decision[3] is supported by substantial evidence and whether the correct legal standards were applied.  *Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008).  If substantial evidence supports the Commissioner's findings and the correct legal standards were applied, the Commissioner's decision stands, and the plaintiff is not entitled to relief.  *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004).  "The failure to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal."  *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005) (quotation omitted).  The court must meticulously review the entire record, but it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner.  *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007).

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Langley*, 373 F.3d at 1118 (quotation omitted).  A decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it."  *Id.* (quotation omitted).  While the court may not reweigh the evidence or try the issues de novo, its examination of the record as a whole must include "anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met."  *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005) (citation omitted).  "The possibility of drawing two inconsistent conclusions from the evidence does not prevent [the] findings from being supported by substantial evidence."  *Lax v. Astrue*,

---

[3] The Court's review is limited to the Commissioner's final decision, 42 U.S.C. § 405(g), which generally is the ALJ's decision, 20 C.F.R. § 404.981, as it is in this case.

489 F.3d 1080, 1084 (10th Cir. 2007) (quoting *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)).

## II.   Applicable Law and Sequential Evaluation Process

To qualify for disability benefits, a claimant must establish that he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1505(a).

When considering a disability application, the Commissioner is required to use a five-step sequential evaluation process. 20 C.F.R. § 404.1520; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). At the first four steps of the evaluation process, the claimant must show: (1) the claimant is not engaged in "substantial gainful activity"; (2) the claimant has a "severe medically determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; *and* (3) the impairment(s) either meet or equal one of the Listings[4] of presumptively disabling impairments; *or* (4) the claimant is unable to perform his or her "past relevant work." 20 C.F.R. § 404.1520(a)(4)(i–iv); *Grogan v. Barnhart*, 399 F.3d 1257, 1260–61 (10th Cir. 2005). If the claimant cannot show that his or her impairment meets or equals a Listing but proves that he or she is unable to perform his or her "past relevant work," the burden of proof shifts to the Commissioner, at step five, to show that the claimant is able to perform other work in the national economy, considering the claimant's residual functional capacity ("RFC"), age, education, and work experience. *Id.*

---

[4] Listing of Impairments, 20 C.F.R. pt. 404, subpt. P, App. 1.

3

**III.    Background and Procedural History**

Plaintiff was born in 1969, completed one year of college, and worked as a grocery store baker and as a title clerk for various automobile dealerships. AR 211, 239–40.[5] Plaintiff filed an application for Social Security Disability Insurance on September 16, 2021. AR 211–12. Plaintiff alleged disability since May 1, 2021, due to fibromyalgia, chronic pain, chronic fatigue, migraines, vertigo, blurred vision, post-traumatic stress disorder, depression, arthritis, and difficulty walking or standing for long durations. AR 211, 238. The Social Security Administration ("SSA") denied her claim initially on April 26, 2022. AR 119–22. The SSA denied her claim on reconsideration on January 6, 2023. AR 131–36. Plaintiff requested a hearing before an ALJ. AR 137. On July 18, 2023 ALJ Michael Leppala held a hearing. AR 40–59. ALJ Leppala issued his unfavorable decision on September 28, 2023. AR 16–34.

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since May 1, 2021, her alleged onset date. AR 21. At step two, the ALJ found that Plaintiff had two severe impairments—fibromyalgia and depression disorder. AR 21–22. The ALJ found several of Plaintiff's impairments to be nonsevere: obstructive sleep apnea, migraine headaches, diabetes mellitus, hyperlipidemia, hypothyroidism, gastroesophageal reflux disease, vitamin D deficiency, trigger thumb, and dysuria. AR 22.

At step three, the ALJ found that none of Plaintiff's impairments, alone or in combination, met or medically equaled a Listing. AR 22–24. Because the ALJ found that none of the impairments met a Listing, the ALJ assessed Plaintiff's RFC. AR 24–32. The ALJ found Plaintiff had the RFC to

---

[5] Document 6 constitutes the sealed Administrative Record ("AR"). When citing to the record, the Court cites to the AR's internal pagination in the lower right-hand corner of each page, rather than to the CM/ECF document number and page.

perform light work as defined in 20 CFR 404.1567(b) except the Claimant is capable of occasionally lifting and/or carrying 20 pounds, frequently lifting and/or carrying ten pounds, standing and/or walking for about six hours in an eight-hour workday, and sitting for about six hours in an eight-hour workday, all with normal breaks. She is further limited to occasionally climbing ramps, stairs, ladders, ropes, or scaffolds, frequently balancing, occasionally stooping, kneeling, crouching, and crawling. The Claimant can understand, carry out, and remember three to four-step instructions and make commensurate work-related decisions, respond appropriately to supervision, coworkers, and work situations, deal with occasional changes in work setting, maintain concentration, persistence, and pace for up to and including two hours at a time with normal breaks throughout a normal workday. She is limited to occasional interaction with coworkers, supervisors, and the general public.

AR 24.

At step four, the ALJ found that Plaintiff was unable to perform her past relevant work as a cashier, inventory clerk, or food sales clerk. AR 32–33. The ALJ found Plaintiff not disabled at step five because she could perform jobs that exist in significant numbers in the national economy, such as laundry classifier and housekeeping cleaner. AR 33–34.

Plaintiff requested review by the Appeals Council. AR 205–07. On January 8, 2024, the Appeals Council denied the request for review. AR 3–8. Plaintiff timely filed her appeal to this Court on March 8, 2024. Doc. 1.[6]

### IV.     Plaintiff's Claims

Plaintiff raises three arguments for reversing and remanding this case: (1) the ALJ erred in his assessment of her need for a hand-held assistive device (cane or walker) by misapplying the durational requirement and failing to support his finding that the hand-held assistive device was not medically necessary; (2) the ALJ erred in assessing the opinion of consultative psychological examiner Mois Johnson, PMHNP; and (3) the ALJ impermissibly picked and

---

[6] A claimant has sixty days to file an appeal. The sixty days begins running five days after the decision is mailed. 20 C.F.R. § 404.981; *see also* AR 4.

chose among the findings of the non-examining psychological consultants in order to support a finding of non-disability. Doc. 21 at 7–27. The Court finds that the ALJ erred in assessing Plaintiff's need for a hand-held assistive device. The Court does not address Plaintiff's other arguments, as they "may be affected by the ALJ's treatment of this case on remand." *Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003).

**V.      Medical Records Pertaining to Plaintiff's Need for a Hand-Held Assistive Device**

Plaintiff's need for a hand-held assistive device (cane or walker) is first documented in the medical evidence of record beginning in early 2023. Additional medical records document her continued use of a hand-held assistive device throughout 2023. The Court summarizes this evidence below.

On January 18, 2023, Plaintiff saw her primary care provider, Certified Nurse Practitioner ("CNP") Carolyn Vavrecan. AR 495. Plaintiff complained of left hip pain, and reported that hiking had become difficult. AR 496. CNP Vavrecan noted that Plaintiff could "ambulate without issues." AP 498. In contrast with this note, however, at the same visit CNP Vavrecan referred Plaintiff to radiology for an x-ray of her left hip due to "pain at ball and socket," noting that Plaintiff "wants pain relief." AR 499.

On January 26, 2023, Plaintiff again saw CNP Vavrecan. AR 547. The physical findings note that Plaintiff could "ambulate without issues." AR 549. In direct contradiction with this, however, the provider prescribed Plaintiff a cane "for hip pain." AR 551.

On April 25, 2023, Plaintiff saw Dr. Brian Robinson, an orthopedic surgeon, for her hip pain. AR 623–27. Plaintiff reported having hip pain for eight to nine years, which had worsened over the past seven months. AR 623. On physical exam, Dr. Robinson noted that Plaintiff had "overall normal gait"; tenderness over the left lateral thigh; decreased abduction of the right hip;

6

painful snapping of the left hip; and slight weakness of the right hip.  AR 624.  Dr. Robinson also noted on physical exam that Plaintiff was in some distress" and "ha[d] difficulty ambulating even with the use of a single-point cane."  AR 625.  Dr. Robinson's objective medical findings also included the following:

> significant tenderness overlying the right greater trochanter.  She has pain with hip flexion to 100°.  Internal rotation is 25° with significant pain.  External rotation is 30° with moderate pain.  Abduction is 25° with moderate pain.  The patient's left hip shows tenderness overlying the greater trochanter.  She has hip flexion to 95° with significant pain, internal rotation of 20° with significant pain. External rotation of 25° with moderate pain. Abduction of 20° with moderate pain.

*Id.*  Dr. Robinson diagnosed Plaintiff with trochanteric bursitis of both hips and myalgia.  *Id.*  Dr. Robinson provided Plaintiff with a wheeled walker, prescribed a two-week course of prednisone, and referred her to physical therapy.  AR 626–27.

On June 13, 2023, Plaintiff had an initial evaluation with physical therapist ("PT") Zachary Mead.  AR 620–22.  Plaintiff advised PT Mead that "normal household activities around the house, squatting, walking 2 blocks and stairs [were] extremely difficult or impossible for her."  AR 620.  She further reported difficulties putting on shoes and socks and lifting objects such as a bag of groceries.  *Id.*  PT Mead noted that Plaintiff was using a front-wheeled walker for "all of her basic mobility."  *Id.*  On functional testing, PT Mead found that, using her wheeled walker, Plaintiff was able to walk only 168 feet during the course of six minutes.  *Id.*  He noted that "Patient was forced to stop secondary to bilateral hip pain and feelings that her legs may give way on her."  *Id.*  PT Mead assessed Plaintiff's pain, range of motion, and strength and from his objective medical findings concluded that Plaintiff had "[b]ilateral hip bursitis with significant limitations in function including daily tasks and ambulation.  Patient exhibits decreased strength, decreased range of motion and tightness in both the rectus femoris and hamstrings bilaterally."  AR 621.  PT Mead prescribed a home exercise program, and planned to

see Plaintiff once per week for eight to ten visits. *Id.* PT Mead set the end goal of Plaintiff's course of physical therapy as improving her "ambulation ability to allow her to walk at least 250 feet during a 6 minute walk test using the appropriate assistive device by the time of discharge." *Id.*

Plaintiff was seen by PT Mead on June 20, 2023 and he noted that Plaintiff was performing her home exercises, and using her walker for support. AR 618–19. Plaintiff was seen by PT Mead again on June 27, 2023 and he noted that she continued to use her front-wheeled walker. AR 616. Plaintiff was seen by PT Mead on July 11, 2023. AR 614–15. Plaintiff reported that she had "been attempting to use a cane at home on controlled surfaces" but that she did "not entirely trust the cane and [was] not clear on how to appropriately use it." AR 614. PT Mead instructed Plaintiff on the use of a single-point cane, noting that Plaintiff "walked approximately 350 feet with verbal cueing initially but good independence by the end." *Id.* PT Mead encouraged Plaintiff to "utilize the cane more frequently throughout the day now that she kn[ew] the appropriate pattern." *Id.*

On July 20, 2023, Plaintiff saw Dr. Robinson for follow up. AR 611–13. Dr. Robinson noted that Plaintiff's hip pain was ongoing, moderate, and that she had pain with movement. AR 611. Plaintiff had pain on the "outer aspect of both of her hips" and "intermittent sharp pain in the groin." *Id.* Plaintiff reported that the prednisone had reduced her pain, but her pain had increased once she finished the medication. *Id.* Dr. Robinson noted that Plaintiff had "overall normal gait" and that she was "walking better with the use of a walker." AR 612. Dr. Robinson's objective medical findings showed no changes in her pain levels or limitations in flexion, abduction, or rotation since her April 25, 2023 visit. *Compare* AR 612, *with* AR 625.

Dr. Robinson thought that Plaintiff would "improve as her strength improves" and planned to reassess after she completed her course of physical therapy. AR 613.

On July 25, 2023, Plaintiff saw PT Mead. AR 608–10. Plaintiff reported "some increased stability in her hips bilaterally during ambulation." AR 608. PT Mead instructed Plaintiff on how to walk with a cane and Plaintiff "ambulated with a single[-]point cane for 2 laps at 135 feet per lap." *Id.* PT Mead reiterated that he was working towards the treatment goal set in his initial treatment plan: improving Plaintiff's walking to the point where she could walk 250 feet in six minutes using a cane or walker. AR 609, 621.

On August 1, 2023, Plaintiff saw PT Mead. AR 605–07. Plaintiff reported that she was "mostly walking with a single-point cane at home" and that she felt that she had some improvement in strength through both hips, but that her gains were slow. AR 605. PT Mead had Plaintiff ambulate with a single-point cane for 2 laps at 135 feet per lap. *Id.* PT Mead assessed Plaintiff with weakness in both hips, left greater than the right. *Id.* He noted that Plaintiff was "able to ambulate safely indoors on uneven terrain using a single-point cane" and that she did not "require a front wheel walker for ambulating short distances." AR 605–06. PT Mead reiterated that he was working towards the treatment goal set in his initial treatment plan—improving Plaintiff's walking to the point where she could walk 250 feet in six minutes using a cane or walker. AR 606, 621.

On August 8, 2023, Plaintiff saw PT Mead. AR 603–04. Plaintiff reported that she had been "weaning away from using her walker and using her cane the majority of the day." AR 603. PT Mead had Plaintiff complete a six-minute walk test using a single-point cane. *Id.* PT Mead noted that Plaintiff was able to walk 415 feet in six minutes using her cane. *Id.* PT Mead

noted that Plaintiff was "exhibiting improved strength and basic functional mobility using a single-point cane." *Id.*

On August 15, 2023, Plaintiff saw PT Mead. AR 600–02. Plaintiff reported improved pain in her hips and rated her pain as a two on a ten-point scale in weight-bearing positions. AR 600. Plaintiff reported that "she was able to go on a short hike over the weekend and [walk] approximately 300 yards using a single-point cane outdoors." AR 600. PT Mead reiterated that he was working towards the treatment goal set in his initial treatment plan—improving Plaintiff's walking to the point where she could walk 250 feet in six minutes using a cane or walker. AR 601, 621.

## VI.    Analysis

Plaintiff argues that the ALJ erred in evaluating Plaintiff's need for a hand-held assistive device because he "cited to evidence well before the prescription for a cane or walker, and . . . picked and chose amongst the medical evidence to come to a finding of non-disability." Doc. 21 at 12. Plaintiff asserts that the ALJ erred both in finding that Plaintiff's hand-held assistive device was not medically required and in finding that her use of a hand-held assistive device did not meet the twelve-month durational requirement. *Id.* at 7–13. The Commissioner asserts that the ALJ properly considered all of the evidence and concluded that the "mixed evidence did not establish that Plaintiff's alleged need for a cane or walker was medically necessary for at least twelve months." Doc. 25 at 9. The Commissioner argues that Plaintiff is merely asking the Court to reweigh the evidence. *Id.* Having closely reviewed the medical evidence of record, the ALJ's decision, the parties' arguments, and the relevant law, the Court finds that the ALJ erred

in analyzing both whether Plaintiff's need for a hand-held assistive device was "medically required" and whether it met the twelve-month durational requirement.

### A. The ALJ committed legal error by failing to discuss probative medical evidence related to whether Plaintiff's hand-held assistive device was medically required.

The use of a medically required hand-held assistive device, such as a cane or walker, can limit a claimant's ability to exert herself in a work setting, and thereby limit her RFC. *See* SSR 96-9p, 1996 WL 374185, at *7 (July 2, 1996).[7] For an ALJ "[t]o find that a hand-held assistive device is medically required, there must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed (i.e., whether all the time, periodically, or only in certain situations; distance and terrain; and any other relevant information)." *Id.* A claimant is not required to "have a prescription for the assistive device in order for that device to be medically relevant to the calculation of her RFC. Instead, she only needs to present medical documentation establishing the need for the device." *Staples v. Astrue*, 329 F. App'x 189, 191–92 (10th Cir. 2009) (unpublished). The ALJ "must always consider the particular facts of a case." SSR 96-9p, 1996 WL 374185, at *7.

Here, the ALJ determined that Plaintiff's hand-held assistive device was not medically required. In support of this finding, the ALJ reasoned that Plaintiff

> showed mostly intact objective findings including normal coordination, gait, station, ambulation, range of motion, strength, reflexes, and sensation with antalgic gait, ambulation with a cane or walker, and tenderness, weakness, and

---

[7] In Plaintiff's case, the vocational expert testified that there were no jobs at the light exertional level which could be performed by someone using a cane or a walker. AR 57. The vocational expert further testified that Plaintiff's did not have skills that would transfer to the sedentary exertional level. AR 56–57.

>reduced range of motion in her hips on occasion.  Exhibits B4F/10 and 15, B7F/6, B9F/2-6, B10F/8, 12, and 16, B12F/9, B13F/16 and 31, and B15F/14, 23, and 26-27.

AR 27.

In reaching his conclusion, however, the ALJ did not adequately consider the medical documentation establishing Plaintiff's need for a hand-held assistive device.  The ALJ's errors are two-fold.  First, the ALJ did not adequately discuss Plaintiff's changing diagnoses and walking limitations in the period between Plaintiff's alleged onset date of May 1, 2021 and the ALJ's decision on September 28, 2023.  Second, for the period of time after Plaintiff started using a hand-held assistive device, the ALJ ignored highly probative evidence that would support Plaintiff's need for a hand-held assistive device, instead cherry-picking only evidence that would support his opposite conclusion.

First, the ALJ failed to adequately discuss Plaintiff's changing diagnoses and walking limitations in the period between Plaintiff's alleged onset date of May 1, 2021 and the ALJ's decision on September 28, 2023.  *See Smith v. Kijakazi*, 14 F.4th 1108, 1116 (9th Cir. 2021) (finding ALJ "erred by seeking only to reach a single disability determination for the entire multi-year period, thereby failing to consider whether [claimant] was disabled for only a . . . portion of that time.").  The ALJ's legal error is evident throughout the ALJ's RFC analysis of Plaintiff's walking limitations.  The ALJ's RFC analysis treats all evidence about Plaintiff's walking limitations for the entire period as equally relevant to Plaintiff's need for a cane or walker at any given point in time.  *See* AR 24–32.  This is problematic because neither Plaintiff's diagnosed impairments affecting her ability to walk nor her walking limitations were static throughout this time period.  Plaintiff first complained to a medical provider about her hip pain affecting her ability to walk on January 18, 2023, AR 496, resulting in her provider referring her

for a hip x-ray, AR 499, and prescribing her a cane "for hip pain" on January 26, 2023, AR 551. Plaintiff then saw orthopedic surgeon Dr. Robinson on April 25, 2023 for hip pain, where she reported that—while she had had some hip pain for eight to nine years—it had worsened over the past seven months. AR 623. Indeed, on April 25, 2023, Dr. Robinson for the first time diagnosed Plaintiff with trochanteric bursitis of both hips. AR 625. Thus, the medical evidence of record shows that Plaintiff's need for a hand-held assistive device first emerged in early 2023. The ALJ does not acknowledge the change in Plaintiff's medical diagnoses. Instead, without any logical bridge, the ALJ cites evidence from 2021 and 2022 to show that Plaintiff did not require a hand-held assistive device in 2023. *See* AR 27 ("Claimant showed mostly intact objective findings including normal coordination, gait, station, ambulation, range of motion, strength, reflexes, and sensation . . . ." (citing Exhibits B4F/10 (AR 372, 8/10/21) and B4F/15 (AR 377, 7/7/21), B7F/6 (AR 414, 12/14/21), B9F/2-6 (AR 432–36, 4/9/22), B10F/8 (AR 447, 8/31/22), B10F/12 (AR 451, 7/25/22), and B10F/16 (AR 455, 1/18/22).).). The ALJ offers no explanation of how the cited evidence from 2021 or 2022 supports the conclusion that Plaintiff did not need a hand-held assistive device in 2023.

Second, for the period of time after Plaintiff began using a hand-held assistive device in 2023, the ALJ ignored highly probative evidence that would support Plaintiff's need for a hand-held assistive device, instead cherry-picking only evidence that would support his opposite conclusion. This is legal error. An ALJ must discuss not only "the evidence supporting his decision," but also "the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects." *Clifton v. Chater*, 79 F.3d 1007, 1009–10 (10th Cir. 1996). Along these lines, "[i]t is improper for the ALJ to pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence."

13

*Carpenter v. Astrue*, 537 F.3d 1264, 1265 (10th Cir. 2008) (quotation and citation omitted). Likewise, an ALJ is not permitted to "mischaracterize or downplay evidence to support [his] findings." *Bryant v. Comm'r, SSA*, 753 F. App'x 637, 641 (10th Cir. 2018) (unpublished) (citing *Talbot v. Heckler*, 814 F.2d 1456, 1463–64 (10th Cir. 1987)).  Failure to follow these controlling legal standards is grounds for remand.  *See, e.g., Byron v. Heckler*, 742 F.2d 1232, 1235 (10th Cir. 1984).

The ALJ ignored several pieces of significantly probative evidence that support Plaintiff's need for a hand-held assistive device.  The ALJ failed to mention the fact that CNP Vavrecan prescribed Plaintiff a cane on January 26, 2023 "for hip pain."  AR 549, 551.[8]  The ALJ failed to mention at any step of the sequential evaluation process the fact that, on April 25, 2023, Dr. Robinson diagnosed Plaintiff with bilateral trochanteric bursitis and myalgia.  *See* AR 21–34.  This is legal error because an ALJ is required to consider all of a claimant's medically determinable impairments[9] when assessing a claimant's RFC.  20 C.F.R. § 404.1545(a)(2).  The ALJ further failed to mention Dr. Robinson's physical examination findings on both April 25, 2023 and July 20, 2023 showing that Plaintiff had moderate to significant pain with almost every hip movement.  *See* AR 26 (ALJ's discussion of Plaintiff's April 2023 visit with Dr. Robinson);

---

[8] The ALJ ignored CNP Vavrecan's prescription of a cane on January 26, 2023 (AR 551), instead cherry-picking only the portion of the treatment note that stated Plaintiff could "ambulate without issues" (AR 549) to support his finding that Plaintiff had normal gait and ambulation. AR 26–27.

[9] A "medically determinable impairment" is an impairment that results from "anatomical, physiological, or psychological abnormalities that can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1521.  The impairment "must be established by objective medical evidence from an acceptable medical source." *Id*.

AR 27 (ALJ's discussion of Plaintiff's July 2023 visit with Dr. Robinson). Specifically, Dr. Robinson noted on both visits that Plaintiff had the following:

> significant tenderness overlying the right greater trochanter. She has pain with hip flexion to 100°. Internal rotation is 25° with significant pain. External rotation is 30° with moderate pain. Abduction is 25° with moderate pain. The patient's left hip shows tenderness overlying the greater trochanter. She has hip flexion to 95° with significant pain, internal rotation of 20° with significant pain. External rotation of 25° with moderate pain. Abduction of 20° with moderate pain.

AR 612, 625.[10] The ALJ's failure to discuss Plaintiff's diagnosis of a pain-producing impairment (trochanteric bursitis) and the physical examination findings of moderate to significant pain with most hip movements is legal error. *See Musgrave v. Sullivan*, 966 F.2d 1371, 1375–76 (10th Cir. 1992) ("The framework for the proper analysis of Claimant's evidence of pain is set out in *Luna v. Bowen*, 834 F.2d 161 (10th Cir.1987). [The ALJ] must consider (1) whether Claimant established a pain-producing impairment by objective medical evidence; (2) if so, whether there is a "loose nexus" between the proven impairment and the Claimant's subjective allegations of pain; and (3) if so, whether, considering all the evidence, both objective and subjective, Claimant's pain is in fact disabling."). Finally, the ALJ failed to discuss the reason that Dr. Robinson gave Plaintiff a wheeled walker—because he found that Plaintiff "ha[d] difficulty ambulating even with the use of a single point cane" AR 625.

The ALJ also ignored portions of PT Mead's treatment notes that support Plaintiff's need for a hand-held assistive device. The ALJ failed to discuss PT Mead's note from his June 13,

---

[10] The ALJ did note Dr. Robinson's findings of tenderness in her hips at both visits. AR 26–27. Point tenderness over the greater trochanter is assessed through palpation and is consider a "classic physical finding in trochanteric bursitis." *Trochanteric Bursitis*, MedScape, https://emedicine.medscape.com/article/309286-overview?form=fpf [https://perma.cc/U2RN-6CWA] (last visited Mar. 27, 2025). Tenderness on palpation is different than findings of pain on movement.

15

2023 initial evaluation that Plaintiff was using a front-wheeled walker for "all of her basic mobility."  AR 620.  He also failed to discuss that on functional testing, PT Mead found that Plaintiff was able to walk only 168 feet during the course of six minutes while using her wheeled walker, further noting that she "was forced to stop secondary to bilateral hip pain and feelings that her legs may give way on her."  *Id.*  The ALJ failed to discuss the fact that PT Mead assessed Plaintiff's pain, range of motion, and strength, and from his objective findings concluded that Plaintiff had "[b]ilateral hip bursitis with significant limitations in function including daily tasks and ambulation.  Patient exhibits decreased strength, decreased range of motion and tightness in both the rectus femoris and hamstrings bilaterally."  AR 621.  The ALJ failed to discuss the fact that PT Mead set the end goal of Plaintiff's course of physical therapy as improving her "ambulation ability to allow her to walk at least 250 feet during a 6 minute walk test using the appropriate assistive device by the time of discharge."  AR 621.[11]  The ALJ also failed to discuss Plaintiff's limited ability to walk at each session with PT Mead.  AR 614 (after PT Mead instructed Plaintiff on how to use a cane, Plaintiff was able to walk "350 feet with verbal cueing initially but good independence by the end"); AR 608 (after further instruction on how to walk with a cane, Plaintiff walked with a single-point cane for two laps at 135 feet per lap); AR 605 (able to ambulate two laps at 135 feet per lap); AR 603 (Plaintiff was able to walk 415 feet in six minutes using her cane).  Most critically, however, the ALJ never mentioned PT Mead's unwavering opinion that Plaintiff needed a hand-held assistive device *to*

---

[11] The ALJ omitted most of PT Mead's objective findings and opinions about Plaintiff's ability to walk.  The ALJ's summary of Plaintiff's June 13, 2023 visit with PT Mead stated only the following:  "In June 2023, the Claimant reported to an initial physical therapy examination complaining of very limited activities of daily living.  The Claimant exhibited normal range of motion with ambulation with a walker and tenderness and reduced strength (left 3/5, right at 4/5) and range of motion in her hips.  The therapist recommended physical therapy once a week for eight to ten weeks."  AR 26.

*walk.* Indeed, walking with a hand-held assistive device remained the ultimate goal throughout PT Mead's treatment of Plaintiff. AR 621, 609, 606, 601.

In conclusion, the ALJ failed to adequately consider the medical documentation establishing Plaintiff's need for a hand-held assistive device. First, the ALJ failed to acknowledge Plaintiff's changing diagnoses and limitations throughout the relevant period. In doing so, the ALJ's RFC analysis erroneously treated all evidence about Plaintiff's walking limitations for the entire period as equally relevant to Plaintiff's need for a cane or walker at any given point in time. Second, the ALJ ignored highly probative evidence that would support Plaintiff's need for a hand-held assistive device, instead cherry-picking only evidence that would support his opposite conclusion. These errors render the ALJ's conclusions about whether Plaintiff's hand-held assistive device was medically required legally unsound and unsupported by substantial evidence.

### B. The ALJ failed to apply the correct legal standards in analyzing whether Plaintiff's use of a hand-held assistive device met the twelve-month durational requirement.

In order to be found disabled, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). This is called the "duration requirement." 20 C.F.R. § 404.1509. Importantly, the claimant need not demonstrate that by the time the application is decided she has *already* experienced twelve continuous months of disability. The durational requirement may likewise be met if the impairment . . . "can be *expected* to last for at least the required 12–month period." SSR 82–

17

52,[12] 1982 WL 31376, at *2 (S.S.A. 1982) (emphasis added). When a hearing decision is being issued "before the impairment has lasted 12 months, the nature of the impairment, the therapeutic history, and the prescribed treatment will serve as the basis for determining whether the impairment . . . will continue to prevent the individual from engaging in any SGA (or any gainful activity) for the additional number of months needed to make up the required 12 months duration." *Id.*

The ALJ found that Plaintiff's use of a cane or walker did not meet the duration requirement as follows:

> Although the Claimant was given a walker in April 2023, the Claimant was only observed using the walker in June 2023. Exhibit B15F/20, 23, and 28. Despite being observed using a cane in April, July, and August 2023, the Claimant also underwent gait training showing some improvement during this period. Exhibit B15F/2, 5, 7, 10, 13, 16-17, and 27. Earlier and during that period, the Claimant was observed to have normal gait and ambulation. Exhibits B4F/15, B7F/6, B10F/8, 12, and 16, B12F/9 and 23, B16F/16, and B15F/14 and 26. As such, the Claimant's use of an assistive device does not meet the duration requirement.

AR 27.

Plaintiff argues that the ALJ erred by only analyzing whether Plaintiff had *already* experienced twelve continuous months of requiring a cane or walker as of the date of the ALJ's decision. Doc. 21 at 11–13. Plaintiff asserts that "there is no indication in the file that she would be able to ambulate without the cane" after the date of the decision. *Id*. at 11. The Court agrees.

The ALJ's decision does not show that the ALJ applied the correct legal standards because he did not consider whether Plaintiff's need for a cane or walker "[could] be expected to last" for a twelve-month period stretching beyond the date of the decision. As discussed above, the ALJ determined that Plaintiff's use of a cane or walker was not medically required. But the

---

[12] SSR 82-52 was rescinded by SSR 23-1p, 2023 WL 823624, effective November 7, 2023. Because the ALJ issued his decision on September 28, 2023, SSR 82-52 applies in this case.

ALJ reached this conclusion by ignoring several pieces of significantly probative evidence. The same errors that plague the ALJ's analysis of whether Plaintiff's hand-held assistive device was medically required plague the ALJ's analysis of the durational requirement. The ALJ failed to consider all of the relevant evidence from Dr. Robinson and PT Mead. The ALJ committed legal error by not addressing this evidence in assessing Plaintiff's need for a cane or walker in 2023. In addition, the ALJ conducted absolutely no analysis of Plaintiff's need to use a cane or walker beyond the date of the ALJ's decision. The Court remands so that the ALJ may remedy these errors.

### VII.   Conclusion

The ALJ erred in analyzing plaintiff's need for a hand-held assistive device. The Court does not address Plaintiff's other claims of error as they "may be affected by the ALJ's treatment of this case on remand." *Watkins*, 350 F.3d at 1299.

IT IS THEREFORE ORDERED that Grace T.'s Motion to Reverse and Remand to Agency with Supporting Memorandum (Doc. 21) is GRANTED.

IT IS FURTHER ORDERED that the Commissioner's final decision is REVERSED, and this case is REMANDED for further proceedings in accordance with this opinion.

_____
JENNIFER M. ROZZONI
United States Magistrate Judge
Presiding by Consent